| | |
|---|---|
| December 30, 1996 | *Astrero* is decided. |
| April 1, 1997 | The entire statutory scheme of IIRIRA becomes effective, per IIRIRA § 309(a) as construed in *Astrero*. |
| June 16, 1997 | The INS files a short memorandum with the BIA, stating that it stands upon its brief filed November 20, 1996. |
| September 30, 1997 | The BIA applies the now-effective stop-time rule of § 240A(d)(1), which applies to Otarola under IIRIRA § 309(c)(5)(A). |
| November 19, 1997 | NACARA is enacted and becomes effective as if originally part of IIRIRA. Section 309(c)(5)(A) is amended, changing the wording from the post-IIRIRA terminology for INS charging documents, "notices to appear," to the pre-IIRIRA terminology "orders to show cause." |

Pedro **RODRIQUEZ**, Plaintiff–Appellant,

v.

**BOWHEAD TRANSPORTATION COMPANY**, an Alaska corporation, Defendant–Appellee.

No. 00–35280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001

Filed Oct. 26, 2001

David S. Teske, Teske & Associates, Ltd., Edmonds, Washington, for the plaintiff-appellant.

Thomas G. Johnson, Bauer, Moynihan & Johnson, Seattle, Washington, for the defendant-appellee.

Before: KOZINSKI and GOULD, Circuit Judges, and SCHWARZER,* District Judge.

* The Honorable William W Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

GOULD, Circuit Judge:

In this case, we decide whether contract language between a stevedoring company and the time charterer of a ship creates a duty for the time charterer to supervise the stevedore's loading operation. We hold that this contract language does not impose such a duty upon the charterer, and we affirm the district court's grant of summary judgment for Bowhead.

## I.  FACTS AND PROCEDURE

Appellant–Plaintiff Pedro Rodriquez[1] ("Rodriquez") worked as a longshoreman securing cargo onto a barge in Seattle. Rodriquez was injured on July 12, 1996, when a forklift operator, whose sight was obscured, lowered a 20,000–pound load onto Rodriquez's foot. Rodriquez's big toe and second toe were amputated as a result of the accident. He missed about six weeks of work. He received about $15,000 in workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1986). The parties do not dispute the details of the accident.

Rodriquez was directly employed by Barrett Business Services ("Barrett"), a temporary labor supplier. Barrett provided longshoremen to Northland Services, Inc. ("Northland"), a stevedoring company that operated a cargo-loading terminal in Seattle and loaded cargo onto barges. The barge Rodriquez was working on, FOSS 343, was owned by the Foss Maritime Company ("Foss").

Appellee–Defendant Bowhead Transportation Company ("Bowhead") is a common carrier. Bowhead arranges for transportation of cargo to several ports in northern Alaska. Northland was loading Bowhead's cargo on the barge when Rodriquez was injured.

Bowhead did not own or operate the loading dock. And Bowhead was not involved in the loading of cargo on the barge. Instead, Bowhead entered into a Standard Terminal Services Agreement in 1996, under which Bowhead was to provide the barge, and Northland was to provide use of its loading terminal and load Bowhead's cargo on the barge.

Bowhead also did not own or operate any of the vessels used to transport cargo. Instead, it contracted with Foss in 1995 to provide and operate the necessary vessels each year. This agreement, where one company arranges for use of a vessel for a particular length of time, is known as a time charter.

Bowhead had limited involvement in loading the barge. Bowhead gave Northland a load plan, identifying which cargo was to be delivered at which port.

Rodriquez asserts that his injury occurred when Northland employees loaded some cargo in an incorrect order and had to rearrange it on the barge deck while other workers were continuing to load the rest of the cargo. No Bowhead representative was supervising the loading process, and no one from Bowhead was at the terminal when Rodriquez was injured.

Rodriquez brought an action in December 1997, against Northland and Foss, and an action in rem against the FOSS 343. The district court held that Rodriquez was a borrowed employee of Northland, and that his sole remedy was workers' compensation under the LHWCA. The district court granted Northland's motion for summary judgment on November 3, 1998, and dismissed with prejudice the claims

---

1.  Appellant is listed interchangeably as "Rodriquez" and "Rodriguez" by both parties and by the district court.

against the other defendants. Rodriquez appealed, but the appeal was dismissed with prejudice when Rodriquez failed to file his opening brief.

Rodriquez thereafter brought this negligence action against Bowhead on July 12, 1999. Bowhead moved for summary judgment on November 18, 1999. Bowhead claimed that it could not be sued for negligence under the LHWCA, and that even if it could be sued, there was no evidence it breached any duty owed to Rodriquez. The district court granted Bowhead's summary judgment motion and dismissed the action on March 13, 2000. This appeal followed.

## II. DISCUSSION

■ We review a grant of summary judgment de novo. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact. *See id.*

Rodriquez's theory is that the Standard Terminal Services Agreement between Northland and Bowhead establishes a duty for Bowhead to oversee and generally supervise the cargo loading operation. Rodriquez asserts that, if Bowhead had provided an agent to supervise the loading of the FOSS 343, the load plan would have been followed correctly from the start, and the injury to Rodriquez would not have occurred.

Bowhead responds that as a time charterer, it does not own the ship and is not supposed to supervise the loading operations—and therefore cannot be sued under the LHWCA. Even if it could be sued, Bowhead claims it breached no duty under the LHWCA, and did not undertake any additional duty to Rodriquez in its contract with Northland.

■ Section 905(b) of the LHWCA permits an injured worker to sue "vessels" for negligence, even if the worker has already received workers' compensation for injuries. *See* 33 U.S.C. §§ 905, 933; *Carpenter v. Universal Star Shipping*, 924 F.2d 1539, 1541 (9th Cir.1991). Our cases make no distinction between charterers and shipowners as far as who is a "vessel" under the LHWCA. *See Carpenter*, 924 F.2d at 1542; *see also Bandeen v. United Carriers (Panama), Inc.*, 712 F.2d 1336, 1337 (9th Cir.1983). Bowhead, as a time charterer, is a "vessel" for the purposes of § 905(b), and Rodriquez may bring a negligence suit against the company.

■ Nevertheless, injured longshoremen are limited in the types of negligence for which they can sue shipowners or charterers. The Supreme Court, in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), found that vessels owe only limited duties to longshoremen under the LHWCA, unless they undertake additional duties through contract: "[A]bsent [a] contract provision, ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Id.* at 172, 101 S.Ct. 1614. Instead of imposing a general duty, the Court in *Scindia* limited the vessel's duties to the longshoreman and, absent contract, made the vessel liable only if it: (1) does not "warn the stevedore of hidden danger which would have been known to [the vessel owner] in the exercise of reasonable care;" (2) "actively involves itself in the cargo operations and negligently injures a longshoreman;" (3) "fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation;" or (4) does not "intervene"

where the vessel knew of a defect creating unreasonable risk of harm to the longshoreman, and the stevedore could not reasonably be expected to remedy the situation. *Id.* at 167, 175–76, 101 S.Ct. 1614.

Applying these standards, the district court correctly held that Rodriquez's injury was not caused by a hidden danger, but rather by the actions of a Northland employee setting a container on Rodriquez's foot. The district court stressed that no Bowhead employee was involved in the loading of the barge, that there was no indication that the injury was caused by the barge's gear, and that there was no evidence Bowhead knew or should have known of the risk that the container would be set on Rodriquez's foot.

■ In this appeal Rodriquez does not offer substantial argument that the *Scindia* analysis of the district court was incorrect. Instead, he urges us to focus on the issue explicitly left open by *Scindia*—that a contract provision may impose a broader duty. The pivotal issue on this appeal is whether the Standard Terminal Services Agreement created a duty for Bowhead to supervise the cargo loading operations.

Rodriquez points to section 6(a) of the contract to support his argument that Bowhead did undertake an additional duty to supervise:

> [Bowhead] also warrants that it will provide a qualified representative to direct the services [Northland] is to perform and to select the materials appropriate for the services, and that [Bowhead] will inspect all materials and services and will instruct [Northland] if any corrections are required.

2. Even if Rodriquez's broad view of "services" were accepted, we have to decide whether Bowhead's duties run not only to Northland, with whom it contracted, but also to Rodriquez as a borrowed employee of Northland. *See Carpenter,* 924 F.2d at 1545; *Turner v. Japan Lines, Ltd.,* 651 F.2d 1300,

This contract language requires us to assess what sort of "services" Bowhead is required by contract to direct, and to whom such a duty is owed. Rodriquez claims that the "services [Northland] is to perform" are the stevedoring services in general—the complete mechanics of the cargo loading operation, from start to finish. If Rodriquez's assertion is correct, Bowhead might owe a duty to supervise the entire operation and ensure that it is being conducted in a safe manner.[2]

Another part of the contract, however, in our view sheds clearer light on what "services" Bowhead is required to direct. Section 7(a) provides:

> [Northland] will load the cargo onto the barge(s) and lash the cargo to [Bowhead's] specifications, instructions and directions which shall be supplied by [Bowhead] prior to [Northland] commencing the loading of the barge(s). If [Bowhead] is not satisfied with the loading, stowage, and/or lashing of any cargo for any reason or if [Bowhead] believes [Northland] has not loaded the cargo in accordance with the load plan or instructions, [Northland] will correct any complaint at its sole expense prior to the departure of the barge(s).

This section shows that while Northland is responsible for the loading of the cargo, Bowhead must provide a plan for cargo to be loaded. The "services" Bowhead is to direct are the services of loading the cargo *to Bowhead's specifications, instructions, and directions.* Bowhead is not, in the contract language, undertaking to direct the services of loading the cargo in general.

1305 (9th Cir.1981). In view of our conclusion below that the contract warranty of Bowhead cannot be interpreted as broadly as Rodriquez urges, we need not decide whether Bowhead owed a duty to Rodriquez under § 6(a) of the contract.

Bowhead did not have any duty to make sure that Northland was loading the cargo in a manner to ensure the safety of its longshoremen. Even if Bowhead could owe such a duty to a Northland employee, the contract between Northland and Bowhead plainly does not obligate Bowhead to supervise the manner in which Northland's stevedore employees load cargo.

### III. CONCLUSION

We hold that the contract between stevedore firm Northland and time charterer Bowhead, viewed as the vessel, does not require the charterer to supervise loading. Rodriquez has not presented evidence showing that Bowhead breached any other limited duty it might have had under *Scindia.*

AFFIRMED.