129 Nev., Advance Opinion 67

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NEWMAR CORPORATION, A
DELAWARE CORPORATION,
Appellant,
vs.
ALLISON MCCRARY, AN
INDIVIDUAL,
Respondent.

No. 58174

**FILED**

OCT 03 2013



No. 59045

NEWMAR CORPORATION, A
DELAWARE CORPORATION,
Appellant,
vs.
ALLISON MCCRARY, AN
INDIVIDUAL,
Respondent.

Consolidated appeals from a district court judgment in a revocation of acceptance and breach of warranty action and from a post-judgment order awarding attorney fees. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

*Affirmed in part and reversed in part.*

Morris Law Group and Robert McCoy, Rex D. Garner, and Raleigh C. Thompson, Las Vegas,
for Appellant.

Alverson, Taylor, Mortensen & Sanders and Kurt R. Bonds, Alan V. Mulliner, and Eric W. Hinckley, Las Vegas,
for Respondent.

13-29454

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, CHERRY, J.:

In this opinion, we consider whether a purchaser of a motor home may revoke acceptance and recover the purchase price from the motor home's manufacturer under the Uniform Commercial Code (UCC). We hold that a purchaser is entitled to revoke acceptance of the motor home against its manufacturer where, as here, privity exists between the manufacturer and the buyer because the manufacturer interjected itself into the sales process and had direct dealings with the buyer to ensure the completion of the transaction. We also conclude that the district court properly awarded incidental and consequential damages but that it abused its discretion in awarding attorney fees. Thus, we affirm the judgment but reverse the award of attorney fees.

## FACTS AND PROCEDURAL HISTORY

Respondent Allison McCrary purchased a luxury motor home manufactured by appellant Newmar Corporation from Wheeler's Las Vegas RV. The purchase included Newmar's two-year express warranty for repair and service. After purchasing the motor home, McCrary let it remain in Wheeler's possession for repairs, due to some issues noticed during the test drives. A week later, McCrary returned to inspect and pick up the motor home. Noticing continued problems with the motor home during the inspection, McCrary met with a Newmar factory representative. She stated that she would not take possession of the

---

[1]The Honorable Kristina Pickering, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

 

motor home until the representative assured her that Newmar would take care of any problems and that there was a full, bumper-to-bumper warranty. After receiving the sought-after reassurances from Newmar, McCrary took possession of the motor home.

Shortly thereafter, the motor home experienced significant electrical problems, making it unsafe to drive and resulting in repeated delays and canceled vacation plans for McCrary. After numerous repairs at the Newmar factory and other repair shops, McCrary attempted to revoke her acceptance of the motor home from Newmar, but Newmar rejected the revocation. McCrary then filed the underlying action asserting, *inter alia*, causes of action for revocation of acceptance, breach of contract, and breach of warranty against Newmar.[2]

Prior to trial, both parties made offers of judgment. Neither offer was accepted. Following a bench trial, based on the particular facts of this case, the district court concluded that McCrary did not take possession of the motor home when she signed the contract and would not have completed the purchase and eventually taken possession except for the interactions with and assurances made by Newmar's representative to McCrary. Ultimately, the district court found in favor of McCrary and awarded her $406,500 in damages—the $385,000 purchase price for the motor home based on the revocation of acceptance, but required McCrary to return the motor home as part of the revocation, $12,500 for the cost of insuring the motor home, and $9,000 for storage fees—plus $44,251.40 in

---

[2]McCrary also asserted claims against Wheeler's. Wheeler's was subsequently removed from the litigation during the summary judgment stage because McCrary attempted to revoke acceptance only from Newmar.

prejudgment interest and $107,581.50 in attorney fees. The court entered judgment accordingly, and these appeals followed.

## DISCUSSION

We must first determine whether revocation of acceptance is an available cause of action against a manufacturer before we can reach the issues of damages and attorney fees.

*Revoking acceptance from Newmar*

Newmar argues that, under Nevada's applicable UCC provision, NRS 104.2608, a buyer can only revoke acceptance from a seller, and while it manufactured the motor home, it was not a seller of the motor home. Thus, Newmar contends that Wheeler's is the only entity from whom McCrary can revoke acceptance and that, because McCrary revoked acceptance with the wrong entity, she alone must bear the consequences of that mistake.

McCrary contends that the district court correctly determined that Newmar was a co-seller based on Newmar's exclusive warranty and its employee's participation in the sales process. McCrary asserts that Newmar should be held to its actions.

The UCC provision governing revocation of acceptance was adopted and codified in Nevada as NRS 104.2608. It allows a buyer to revoke her acceptance of a purchased good if the item suffers from a "nonconformity [that] substantially impairs its value to the buyer" and the buyer accepted the item on the understanding that the seller would cure the nonconformity or was induced into accepting a nonconforming item "either by the difficulty of discovery before acceptance or by the seller's

assurances." NRS 104.2608(1)(a), (b);[3] *see also* NRS 104.2608(2) (requiring notification to the seller of the defect and timeliness for revocation). Under the UCC, "'[s]eller' means a person who sells or contracts to sell goods." NRS 104.2103(1)(c). Here, there is no question as to the motor home's nonconformity, and thus we turn directly to whether the manufacturer can be considered a "seller" under the UCC.

We have previously addressed revocation of acceptance against the immediate seller, but we have not yet determined whether revocation of acceptance is available against a manufacturer. *See Waddell v. L.V.R.V., Inc.*, 122 Nev. 15, 125 P.3d 1160 (2006) (affirming judgment for revocation against the dealer that sold the subject motor home); *Havas v. Love*, 89 Nev. 458, 459, 514 P.2d 1187, 1188 (1973) (allowing revocation against the defendant who sold a motorbus to the plaintiff). The Legislature has given some guidance, directing our courts to liberally construe and apply the UCC to "make uniform the law among the various jurisdictions." NRS 104.1103(1)(c). However, the jurisdictions are split as to whether revocation of acceptance is proper against a manufacturer, giving us the opportunity to decide the issue de novo. *See Wyeth v. Rowatt*, 126 Nev. ___, ___, 244 P.3d 765, 775 (2010) ("[I]ssues involving a purely legal question are reviewed de novo.").

In revocation of acceptance cases, the term "seller" has been restricted to the immediate seller by a majority of jurisdictions but has been inclusive of the manufacturer by a minority of jurisdictions. A

---

[3]The legislative history of NRS 104.2608 does not indicate whether the Legislature intended that the buyer may revoke only against the immediate seller or may return the goods to a remote seller such as the manufacturer.

Supreme Court
OF
Nevada

(O) 1947A

majority of jurisdictions have determined that revocation is not available against a manufacturer because the manufacturer is not a "seller" under the UCC. *See, e.g., Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 214 (Ariz. 1981) (following "the logic as well as the letter of the U.C.C." to require privity and hold that a motor home "manufacturer who does not sell to the purchaser [directly and for whom the seller was not agent] cannot be liable for revocation and attendant damages"); *Griffith v. Latham Motors, Inc.*, 913 P.2d 572, 577 (Idaho 1996) (determining that the manufacturer could not be liable under a revocation claim because it did not sell the vehicle to the plaintiffs); *Henderson v. Chrysler Corp.*, 477 N.W.2d 505, 507-08 (Mich. Ct. App. 1991) (rejecting revocation against nonselling manufacturer when there was no privity and leaving plaintiff with remedies under a warranty); *Neal v. SMC Corp.*, 99 S.W.3d 813, 816-18 (Tex. App. 2003) (noting that because "[t]he nature of a revocation claim logically requires privity of contract[,] . . . revocation is available to the buyer only against the immediate seller"; the motor home manufacturer, "in the absence of a contractual relationship with the consumer, is not a seller" by virtue of a manufacturer's express warranty); *see generally Fedrick v. Mercedes-Benz USA, L.L.C.*, 366 F. Supp. 2d 1190, 1200 (N.D. Ga. 2005); *Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144, 150 (Conn. 1976); *Hardy v. Winnebago Indus., Inc.*, 706 A.2d 1086, 1091 (Md. Ct. Spec. App. 1998); *Ayanru v. Gen. Motors Acceptance Corp.*, 495 N.Y.S.2d 1018, 1023 (Civ. Ct. 1985); *Reece v. Yeager Ford Sales, Inc.*, 184 S.E.2d 727, 731 (W. Va. 1971). According to these courts, revocation is not available against the manufacturer unless there is a direct contractual relationship between the manufacturer and the buyer or an agency relationship between the manufacturer and the seller. The rationale

behind this position is that revocation is intended to return the buyer and seller to their original positions and that because the manufacturer does not own the goods or receive the purchase price when the goods are sold, it cannot be involved in restoring the parties to their former positions. *See, e.g., Seekings*, 638 P.2d at 214; *Griffith*, 913 P.2d at 577; *Henderson*, 477 N.W.2d at 507-08; *Neal*, 99 S.W.3d at 817-18; *Gasque v. Mooers Motor Car Co., Inc.*, 313 S.E.2d 384, 390 (Va. 1984).

Conversely, a minority of states have held that revocation of acceptance can be had against entities further removed from the transaction than the immediate seller, such as the manufacturer. *See, e.g., Ford Motor Credit Co. v. Harper*, 671 F.2d 1117, 1126 (8th Cir. 1982); *Durfee v. Rod Baxter Imps., Inc.*, 262 N.W.2d 349, 357-58 (Minn. 1977); *Volkswagen of Am., Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982); *Fode v. Capital RV Ctr., Inc.*, 575 N.W.2d 682, 687-88 (N.D. 1998); *Gochey v. Bombardier, Inc.*, 572 A.2d 921, 924 (Vt. 1990). As explained in *Gochey*, this decision is based on the viewpoint that traditional privity is not necessary, but that the relationship established based on a manufacturer's warranty is sufficient:

> "Under state law the right to revoke acceptance for defects substantially impairing the value of the product and to receive a refund of the purchase price are rights available to a buyer against a seller in privity. Where the manufacturer gives a warranty to induce the sale it is consistent to allow the same type of remedy as against that manufacturer. Only the privity concept, which is frequently viewed as a relic these days, has interfered with a rescission-type remedy against the manufacturer of goods not purchased directly from the manufacturer. If we focus on the fact that the warranty creates a direct contractual

> obligation to the buyer, the reason for allowing the same remedy that is available against a direct seller becomes clear."

572 A.2d at 924 (quoting *Ventura v. Ford Motor Corp.*, 433 A.2d 801, 811-12 (N.J. Super. Ct. App. Div. 1981) (citations omitted)).

In assessing these two positions, we find the majority position to be too inflexible in its adoption of a strict, literal interpretation of privity and in defining what constitutes a "seller." This position ignores the UCC's mandate for liberal application. We perceive instances where, as here, revocation of acceptance against a manufacturer might be appropriate.

We also have concerns with the minority view, based on the fact that the jurisdictions taking this approach have expressly eliminated privity, enacted relevant statutory definitions, or eliminated privity from consideration. *See, e.g.*, *Novak*, 418 So. 2d at 803-04 (determining that based on the Mississippi Legislature's "abolish[ment of] privity of contract for breach of warranty claims including actions brought under the [UCC]," the sales contract and the accompanying manufacturer's warranty were "so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale"); *Harper*, 671 F.2d at 1126 (declining to limit relief as it would be "contrary to the Code's mandate to administer its remedies liberally," even though the UCC "eliminates the defense of privity in suits for damages for breaches of warranties, [but remains] silent as to revocation of acceptance"); *Durfee*, 262 N.W.2d at 357-58 (concluding that because plaintiff could have sued under a warranty theory, when "the absence of privity would not bar the suit despite the language of the pertinent Code sections[,]" the same logic should be applied to revocation as "[t]he remedies of the Code are to be

liberally administered"); *Fode*, 575 N.W.2d at 687-88 (determining that the buyer could revoke acceptance from a nonprivity manufacturer based on the merger of the warranty with the contract); *Gochey*, 572 A.2d at 924 (concluding that an express warranty creates a contract with the ultimate buyer, pointing out that "[w]hen the manufacturer's defect results in revocation by the consumer, the manufacturer must assume the liability it incurred when it warranted the product to the ultimate user"). Our Legislature thus far has been silent on the issue of privity. As a result, we are hesitant to completely eliminate any requirement of privity, particularly because doing so may result in too broad an application of the revocation of acceptance cause of action.

While we have concerns with both positions, because of the unique circumstances of this case, we need not choose between the two at this point. The direct interactions and representations made by Newmar to McCrary expanded the relationship between the two parties and created privity.[4] Newmar, even though it was the manufacturer, interjected itself into the sales process and through its representations assisted in the completion of the sales transaction. Under the unique facts of this case, we conclude that this direct involvement on the part of the manufacturer in the sales process created a direct relationship with the buyer sufficient to establish privity between the manufacturer and the buyer. *See Alberti v. Manufactured Homes, Inc.*, 407 S.E.2d 819, 824 n.4

---

[4]*Black's Law Dictionary* defines privity as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interest." *Black's Law Dictionary* 1320 (9th ed. 2009).

(N.C. 1991) (stating that the prerequisite for revocation of acceptance that there be a direct contractual relationship between the parties can include the manufacturer when the buyer and manufacturer have direct dealings with each other); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc.*, 444 So. 2d 1068, 1072 & n.4 (Fla. Dist. Ct. App. 1984) (holding that privity can exist between the manufacturer and buyer even though there is an intermediate seller when there are direct contacts between the two parties in completing the sale). This resulting relationship is sufficient to include the manufacturer within the definition of "seller" under NRS 104.2103(1)(c), and, as a result, allow for revocation of acceptance against the manufacturer. When the manufacturer is ultimately responsible for the defect that resulted in the breach to the consumer and has directly involved itself in the transaction to ensure the sale, it can be the entity that is held responsible to the consumer. Accordingly, we affirm the district court's decision that McCrary was entitled to revoke acceptance from Newmar.

*Award of incidental and consequential damages*

Newmar next argues that its single-page warranty explicitly and clearly disclaims liability for incidental and consequential damages. Newmar further contends that revocation cancels only a contract of sale and that the warranty from a manufacturer is still intact, preventing the collection of those damages. However, Newmar's repeated failed attempts to repair the motorhome under the expanded warranty resulted in the frustration and deprivation of McCrary's benefit of the bargain to the point that no remedy was available to her. NRS 104.2719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter."

Because McCrary's remedy failed to serve its purpose, she was entitled to pursue remedies available under the UCC. The pertinent UCC provision, NRS 104.2715, explicitly provides for the award of incidental and consequential damages. *See also Clark v. Int'l Harvester Co.*, 581 P.2d 784, 797, 802 (Idaho 1978) (noting that "other courts have uniformly held that where a party limits its warranty obligation to the repair and replacement of defective parts failure to fulfill that obligation, if such failure operates to deprive the other party of the substantial value of the bargain, causes the limited remedy 'to fail of its essential purpose' within the meaning of that section and entitles the party to pursue the remedies otherwise available under the UCC" including incidental and consequential damages (quoting Idaho Code § 28-2-719(2))); *Durfee v. Rod Baxter Imps., Inc.*, 262 N.W.2d 349, 357-58 (Minn. 1977) (awarding the purchase price plus incidental damages and determining that because "[t]he existence and comprehensiveness of a warranty undoubtedly are significant factors in a consumer's decision to purchase a particular automobile[,] . . . [w]hen the exclusive remedy found in the warranty fails of its essential purpose and when the remaining defects are substantial enough to justify revocation of acceptance, we think the buyer is entitled to look to the warrantor for relief"); *Koperski v. Husker Dodge, Inc.*, 302 N.W.2d 655, 664, 666 (Neb. 1981) (noting that "'[r]epair and replacement' clauses, . . . have become the basic mechanism by which manufacturers limit or avoid liability in actions for breach of warranty," and explaining that when the car is so defective that the repair and replace warranty fails in its essential purpose, the buyer may sue for breach of warranty and may, in some cases, sue for incidental and consequential damages); *Ehlers v. Chrysler Motor Corp.*, 226 N.W.2d 157, 161 (S.D. 1975) (determining

that respondent was entitled to incidental and consequential damages under the warranty when the available remedy failed its essential purpose due to a breach caused by unreasonable delays in the vehicle's repairs). Accordingly, because incidental and consequential damages may be awarded pursuant to the revocation claim, we affirm the district court's award of those damages. *See* NRS 104.2715; *Novak*, 418 So. 2d at 803; *Fode*, 575 N.W.2d at 689.

*Award of attorney fees*

Newmar also challenges the award of attorney fees. We conclude that the award of attorney fees to McCrary was an abuse of discretion, as the award was not authorized under the plain language of NRCP 68(f) and NRS 17.115(4). *See McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 673, 137 P.3d 1110, 1129 (2006). We conclude that the district court properly declined to award attorney fees under NRS 18.010 because Newmar's defense against revocation was not unreasonable given the split in jurisdictions on this issue. Additionally, attorney fees were not proper under NRS 17.115(4) because McCrary did not receive a larger award at trial than she would have under the pretrial offer of judgment.

## CONCLUSION

For the reasons articulated above, we conclude that when a vehicle has substantial, irreparable defects, a purchaser is entitled to revoke acceptance of the vehicle from the manufacturer when the manufacturer interjected itself into the sales process and made direct representations to the buyer, thereby creating privity. Furthermore, under the UCC, the purchaser is permitted to receive the purchase price

along with incidental and consequential damages.[5]  We further conclude that the district court abused its discretion in awarding attorney fees. Thus, we affirm the judgment but reverse the order awarding attorney fees.

_____ , J.
Cherry

We concur:

_____ , J.
Gibbons

_____ , J.
Hardesty

_____ , J.
Parraguirre

_____ , J.
Douglas

_____ , J.
Saitta

---

[5]In light of our resolution of this appeal, we need not reach Newmar's remaining contentions.