NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 3 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GORDON WOOD,

        Plaintiff-Appellant,

v.

WINNEBAGO INDUSTRIES, INC.,

        Defendant-Appellee.

No. 22-16805

D.C. No.
2:18-cv-01710-JCM-BNW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 8, 2023
Phoenix, Arizona

Before: HAWKINS and COLLINS, Circuit Judges, and S. MURPHY,[**] District
Judge.
Partial Concurrence and Partial Dissent by Judge COLLINS.

    Appellant-Plaintiff Gordon Wood appeals the adverse summary judgment

orders on each of his claims in a warranty dispute. We have jurisdiction under 29

U.S.C. § 1291, and for the reasons below, we affirm.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Stephen Joseph Murphy III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

On April 22, 2017, Plaintiff-Appellant Gordon Wood purchased a Winnebago recreational vehicle ("RV") that came with a three-year, 100,000-mile limited manufacturer's warranty ("Warranty"). The Warranty outlined several steps customers needed to take before they could claim that Winnebago breached its Warranty obligations. First, customers needed to "present the [RV] to an authorized Winnebago service facility during normal business hours" and provide that facility with "a written list of items to be inspected or repaired." Second, if a customer felt the repairs failed or were "otherwise inadequate," they needed to "contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy, including a list of the defects." Third, they needed to "provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty."

During the summer and fall of 2017, Wood discovered that his new RV had twenty noticeable defects. So, pursuant to the Warranty's instructions, he scheduled a service appointment with Camping World, an authorized Winnebago dealership, dropping off the RV for repairs on October 31, 2017, and providing Camping World employees with a list of the RV's defects.

When, after three months, Camping World had not completed the repairs, Wood sent a letter to Winnebago Owner Relations, including a list of the RV's defects. The letter stated Wood's belief that Camping World's repairs were taking

2

too long: he noted that he could not check in until three weeks after he booked the service appointment and was told that repairs could not be completed until Camping World received certain parts, which were scheduled for delivery on January 30, 2018. To Wood, "[f]our months to get some factory warranty work done that should have been done in the PDI" was unacceptable. Thus, he ended his letter by providing a phone number for Camping World's Service Advisor and asking Winnebago to "[p]lease help me out."

On March 31, 2018, Wood (through counsel) sent a second letter to Winnebago Owner Relations, outlining the RV's alleged defects and explaining that Camping World's repairs were taking too long. This letter raised new allegations that Winnebago "breached its express and/or implied warranties to Gordon Wood" by failing to manufacture the RV correctly and for failing to ensure that Camping World's repairs were promptly completed, which was an "essential purpose" of the Warranty.[1] According to the letter, Winnebago's conduct and Camping World's deficient service substantially impaired the RV's use, value, and safety and ultimately amounted to twenty-five violations of state and federal laws. The letter went on to detail various economic and non-economic damages caused by Winnebago and Camping World's alleged conduct and demanded that Winnebago

---

[1] Importantly, the second letter couched Wood's grievances in the Warranty's precise language by noting that Camping World's attempted repairs "failed or [were] otherwise inadequate."

repurchase the RV. Winnebago admits that it received these letters and that it never responded to Wood or his counsel.

Camping World completed the repairs on July 10, 2018. A few weeks later, Wood concluded that Camping World failed to fix the original twenty defects and noticed several new ones. Having "lost faith" in Camping World's ability to fix the RV, Wood parked it on one of his properties, where it has been located at all relevant times.

Wood filed suit on July 30, 2018, claiming expressed and implied breaches of the Warranty, violations of the Magnuson Moss Warranty Act ("MMWA"), and violations of the Nevada Deceptive Trade Practices Act ("NDTPA"), which were based on representations Winnebago made about the quality of its vehicles in several brochures. Wood now appeals from the grant of summary judgment in favor of Winnebago on all of Wood's claims in two orders issued on March 23, 2020, and November 20, 2020.[2]

We review a grant of summary judgment de novo. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact." *Rodriguez v. Bowhead Transp. Co.*, 270 F.3d 1283, 1286

---

[2] The parties stipulated to dismiss a claim for breach of the implied warranty of habitability without prejudice.

(9th Cir. 2001). When the nonmoving party has the burden of proof at trial, the moving party only needs to point out "that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 323–34.). We first consider Wood's breach of express and implied warranty claims; specifically, whether Wood's non-compliance with several pre-conditions to litigation bars his claims as a matter of law. Nevada law controls this Court's interpretation of the Warranty. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (rules for determining the measure of damages in a breach of contract claim are substantive and therefore determined by the place of performance). In Nevada, contractual terms that limit the availability of litigation are permissible. *Chiquita Mining Co. v. Fairbanks, Morse & Co.*, 60 Nev. 142 (1940) ("The rights and liabilities of the plaintiff and defendant depend upon the terms of the contract."). Like all contracts, agreements that impose pre-conditions to litigation must be given their "usual and ordinary signification." *MB Am., Inc. v. Alaska Pac. Leasing*, 132 Nev. 78, 82 (2016).

The Warranty unambiguously forecloses Wood's breach claims if he failed to meet the three pre-conditions to litigation. Wood undisputedly complied with the first requirement on October 31, 2017, when he took the RV to Camping World and provided it with a list of the RV's defects. However, the parties disagree about whether two letters Wood sent to Winnebago in early 2018 satisfy the second ("notice") and third ("opportunity to cure") requirements.

For its part, the district court noted that the "repairs provision is formulated in the past tense: 'In the event you feel the repairs *made* by an authorized service center *failed* or are otherwise inadequate . . . .'" (emphasis in the original). Given that it was "undisputed that the letters from Wood and his attorney were sent and received while Wood's RV was still in Camping World's possession undergoing repairs," the letters could not have provided Winnebago with notice of "any failed or inadequate repairs completed by Camping World." Thus, the court held that Wood failed to "satisfy his written notice obligations under the unambiguous [Warranty] and cannot prevail on his breach of express warranty claim."

The district court's conclusion was correct to the extent that Wood claims Winnebago breached the Warranty by failing to repair the RV's alleged defects. The undisputed facts show that Wood never gave Winnebago an opportunity to cure Camping World's allegedly deficient repairs. However, this was not Wood's only theory of breach, nor did the Warranty limit proper notice to "failed repairs." By its

6

plain text, the Warranty allowed customers to meet the notice requirement by informing Winnebago that a service facility's repairs were "otherwise inadequate."

Wood's first letter to Winnebago clearly alleges that Camping World's repairs were taking an unacceptable amount of time. Thus, it provides a basis from which a reasonable jury could find that Wood provided Winnebago with sufficient notice that Camping World's repairs were "inadequate" within the Warranty's meaning of that term. A reasonable jury could likewise find that Wood's second letter provided Winnebago with an opportunity to cure this inadequacy. Because the second letter reiterates Wood's position that the repairs were taking too long and asks Winnebago to take direct action, it was error to find that Wood's non-compliance barred his claims.

Nevertheless, because "we may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt," *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003), we do so here. Even if Wood complied with the Warranty's pre-conditions to litigation by providing Winnebago with notice and an opportunity to cure Camping World's unreasonable delays, he has not established that Winnebago had any legal obligation to ensure that Camping World's repairs were finished within a reasonable amount of time: neither the Warranty's text nor Nevada agency law create such an obligation.

The Warranty includes one express guarantee:  Winnebago promises to repair and replace covered parts at no cost to its customers.  In the Warranty, Winnebago makes no representations about how warranted repairs will be completed; it merely states that Winnebago will pay for them, including parts and labor.  Furthermore, the Warranty reflects a clear intention to separate Winnebago's repairs from repairs made by its authorized dealerships and service centers: "In the event you feel the repairs made by an authorized service center failed or are otherwise inadequate, you must . . . provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty."

Of course, the Warranty's language does not necessarily mean that Winnebago has *no obligations* regarding the length of its authorized dealers' repairs. However, any such obligation must come from an external source of law.  Thus, on appeal, Wood argues Winnebago's responsibility for Camping World's delays arises under agency law because Camping World acted on Winnebago's actual or apparent authority when it undertook the repairs.

Nevada agency law determines the nature of Camping World and Winnebago's relationship.  *Klaxon*, 313 U.S. at 496.  In Nevada, "the existence of an agency relationship is a question of fact, whether there is sufficient evidence of such a relationship so as to preclude summary judgment is a question of law." *PetSmart, Inc. v. Eighth Judicial Dist. Court in & for Cnty. of Clark*, 137 Nev. 726,

8

730 (2021). "To bind a principal, an agent must have actual authority . . . or apparent authority." *Simmons Self-Storage v. Rib Roof, Inc.*, 130 Nev. 540, 549 (2014), *as modified on denial of reh'g* (Nov. 24, 2014). Generally speaking, a dealership acts as a manufacturer's agent "[o]nly when a manufacturer controls the day-to-day or operative details of the dealer's business." *Hunter Min. Labs., Inc. v. Mgmt. Assistance, Inc.*, 104 Nev. 568, 571 (1988) (cleaned up). However, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Simmons*, 130 Nev. at 549. Additionally, a dealership acts under a manufacturer's apparent authority where a customer subjectively believes the dealer has the authority to act on the principal's behalf, and this belief is objectively reasonable. *PetSmart, Inc.*, 137 Nev. at 733.

The undisputed facts show that Winnebago exercised insufficient control over Camping World to establish a traditional agency relationship under Nevada law. Winnebago does not control any of Camping World's day-to-day business decisions, it merely compensates Camping World for repairs that were covered under Winnebago's Warranty and occasionally advises Camping World about whether certain repairs are covered. Additionally, Wood fails to establish actual authority because he does not allege that Camping World reasonably believed that Winnebago

9

wished for Camping World to be its agent for the purposes of repairs. *Simmons*, 130 Nev. at 549 ("When examining whether actual authority exists, we focus on an agent's reasonable belief."). Instead, Wood details Winnebago's process of pre-authorizing certain repairs, which only illuminates the conditions under which Winnebago will compensate a dealer. The process indicates nothing about Camping World's beliefs and does not tend to show that a reasonable dealer in Camping World's position would believe it acted under Winnebago's actual authority when completing repairs.

Finally, Wood also fails to establish apparent authority. Although Wood could offer his own testimony to show his subjective belief that Camping World acted on Winnebago's apparent authority when conducting repairs, this belief is objectively unreasonable in light of the Warranty's plain language. For example, the Warranty clearly notes that "although authorized to sell and to service Winnebago motorhomes under warranty, the dealer is an independent business." This statement is at least inconsistent with any belief that Camping World acted on Winnebago's authority, and, under Nevada law, "[r]eliance will not be reasonable if the party claiming apparent agency 'closed [their] eyes to warnings or inconsistent circumstances.'" *PetSmart, Inc.*, 137 Nev. at 733. *See also Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1272 (10th Cir. 2020) (finding no agency relationship

in the face of identical warranty language, which "clearly distinguishes between Winnebago and other authorized service facilities.").

Accordingly, even if Wood satisfied the Warranty's pre-conditions to litigation, his breach of expressed and implied warranty claims fail. And, given that MMWA "claims stand or fall with . . . express [] warranty claims under state law," Wood's MMWA claims also fail. *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1146 (9th Cir. 2022) (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015)) (internal punctuation omitted). We, therefore, affirm the district court's grant of summary judgment on Wood's breach of express and implied warranty and MMWA claims, albeit on slightly different grounds.[3]

Lastly, we affirm the district court's summary judgment orders on Wood's NDPTA claims. To prove an NDTPA claim, a consumer-plaintiff must prove: (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–58 (D. Nev. 2009). Under Nevada law, "representations as to the reliability and performance of the system [that] constitute mere commendatory sales talk about the product ('puffing')" are not actionable. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). That is, customers cannot rely on "generalized, vague and unspecific assertions," *Glen Holly*

---

[3] Because these claims fail, we decline to issue the limiting instruction Wood requests in his briefings. The instruction is improper absent a viable theory of breach.

11

*Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir.), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) (citations omitted), and a claim is not actionable when it is "either vague or highly subjective" out of recognition that "consumer reliance will be induced by specific rather than general assertions," *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

Wood's NDPTA claims arise from brochures wherein Winnebago makes various representations about the quality of its RVs. For example, in a brochure entitled, "When Your Name Means RVing," Winnebago represents that its new recreational vehicles and motorhomes undergo a "113 point ship out inspection" where "everything has to be perfect" and claimed to employ an "extensive test regimen, which includes structural tests, component tests, durability tests, corrosion and temperature tests and more." Additionally, in its "Four Simple Questions" brochure, Winnebago represents that its motorhomes go "through the most demanding set of tests in the industry" and that "every Winnebago Industries motorhome is engineered to stand up to the rigors of the road." Finally, in its "Grand Tour" brochure, Winnebago represents that the Grand Tour is "nothing but the best" and reiterates that "every coach undergoes an extensive 113-point inspection."

Wood claims he reviewed these brochures and relied on them when deciding to purchase the RV. However, he fails to establish that any of their representations

are fraudulent. For example, there is no evidence that Winnebago does not conduct 113-point ship-out inspections on its RVs. Likewise, Wood has not introduced evidence concerning the kinds of repairs Winnebago allegedly expects its vehicles to require after leaving Winnebago's manufacturing facilities. Further, Winnebago's representations that its vehicles "stand up to the rigors of the road" are merely vague, unspecific assertions. Thus, there are no facts from which a jury might find that Winnebago committed an act of consumer fraud, which is a required element of his claim, and, thus, his NDPTA claims fail as a matter of law.

**AFFIRMED.**

*Wood v. Winnebago Industries, Inc.*, No. 22-16805

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the memorandum disposition to the extent that it affirms the summary judgment against Plaintiff Gordon Wood on his cause of action under the Nevada Deceptive Trade Practices Act against Winnebago Industries, Inc. ("Winnebago"). But I dissent from the majority's affirmance of the summary judgment against Wood with respect to his breach of express warranty claims under Nevada law and under the Magnuson-Moss Warranty Act ("MMWA").

The parties do not dispute that, as applicable here, the relevant requirements of Nevada law and of the MMWA are the same and that, under these laws, Winnebago's express warranty properly specified that Wood had to take certain steps before he could file a lawsuit against Winnebago alleging breach of warranty. The parties further agree that, in construing the parties' respective obligations under the written warranty at issue here, we should apply Nevada law. Here, the applicable written warranty states that, "to obtain warranty repairs," Wood had to bring his motorhome to an authorized service center with a list of the items to be repaired. There is no dispute that this step was fulfilled. The warranty then further provides that, "[i]n the event [Wood] feels the repairs made by an authorized service center failed or are otherwise inadequate," he must "contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy,

including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty" (emphasis in original). In my view, the district court erred in concluding that, as a matter of law, Wood failed to satisfy these requirements.

I agree with the majority that a reasonable trier of fact could conclude that, by sending two letters complaining about the extraordinary delays in the repair efforts of Winnebago's authorized service facility (non-party "Camping World") and by attaching or including a list of the requested repairs, Wood complied with the requirement that he "contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy, including a list of the defects." *See* Memo. Dispo. at 7. An unreasonable delay in completing ongoing repair efforts— *i.e.*, that too few repairs *have* been completed thus far—is certainly an "inadequacy" in the "repairs made by an authorized service center."

The only question, then, is whether Wood also "provide[d] Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." A trier of fact could also resolve this issue in Wood's favor. The first letter concisely spells out the problems with the unreasonable delay in repairs, provides the contact information for Camping World, and concludes, "Please help me out." This open-ended request for Winnebago's assistance was fully sufficient to "provide Winnebago an opportunity to repair the motorhome." The letter put the

2

ball in Winnebago's court, and Winnebago had every opportunity to do whatever it thought was necessary to ensure that its warranty obligations were fulfilled. The warranty expressly states that, after a buyer has provided Winnebago such an opportunity, "*Winnebago may require* [the buyer] to deliver the motorhome to *another* authorized service center or its facilities in Forest City, Iowa" (emphasis added). But Winnebago did not request either of those things; indeed, it did not respond in any way to Wood's letter. In doing so, Winnebago effectively allowed Camping World to proceed at its unreasonably slow pace, and Winnebago thereby forfeited its opportunity to cure the assertedly unreasonable delay in repairs.

The second letter likewise provided Winnebago a further "opportunity to repair the motorhome" before Wood filed this lawsuit some four months later. Winnebago complains that the second letter did not, by its terms, affirmatively offer or request further repairs; instead, it requested that Winnebago take the motorhome back and pay Wood reliance damages. But the warranty merely requires that Winnebago be provided an "opportunity to repair the motorhome," and nothing stopped Winnebago from responding to Wood's letter by instructing him to deliver the motorhome to another dealership or to Winnebago's facilities in Iowa. Had Wood then refused to comply, Winnebago could have argued that it had been denied any opportunity at that point to repair the vehicle, and Wood's only defense to that argument would have been to rest on a legal contention that the

3

delays were already so unreasonable that they could not be remedied by *more* time spent on repair efforts. Once again, however, Winnebago inexplicably decided not to respond to Wood's letter *at all*, and so it forfeited any opportunity it had to attempt to repair the vehicle. Winnebago apparently thinks that it had no obligation to ever say anything to enforce its contractual right to an "opportunity" to repair the vehicle, but nothing in the language of the warranty supports its extraordinary sit-on-your-hands approach.

The majority does not directly disagree with any of this. Instead, it relies on the alternative ground that Winnebago did not have "any legal obligation to ensure that Camping World's repairs were finished in a reasonable amount of time." *See* Memo. Dispo. at 8. The majority asserts that nothing in the text of the warranty creates such an obligation; that the obligation therefore "must come from an external source of law"; and that "agency law" cannot be the external source that supplies that obligation. *Id*. In my view, the majority's (and the parties') discussion of agency law is largely beside the point. Under the plain terms of the MMWA, Winnebago's designation of Camping World as an authorized service center does not detract in any way from *Winnebago's* obligations to Wood, because the statute expressly states that "no such designation shall relieve the warrantor of his direct responsibilities to the consumer or make the representative a cowarrantor." 15 U.S.C. § 2307. Thus, the obligation to satisfy the warranty

4

*always* remained with Winnebago. Although Camping World's satisfactory performance might supply Winnebago with a *defense* that its warranty obligations had been fulfilled, Winnebago would be left holding the bag, so to speak, if Winnebago was affirmatively alerted to the warranty issues and Winnebago then, through its inaction (and Camping World's failure), let them go unremedied.

Moreover, to the extent that a warranty requires a manufacturer to make repairs, they clearly must be done within a *reasonable* period of time. After a reasonable amount of time has passed, Winnebago cannot plausibly contend that it has not had an "opportunity" to make the necessary repairs: an opportunity is neither an indefinite nor an infinite period of time. Moreover, the notion that warranty repairs must be done within a reasonable period of time is clear under Nevada's version of the Uniform Commercial Code ("U.C.C."). *See Newmar Corp. v. McCrary*, 309 P.3d 1021, 1027 (Nev. 2013) (holding that failure to successfully complete repairs within a reasonable time was a breach of warranty that, under the U.C.C., allowed the remedy of revocation); *Waddell v. L.V.R.V. Inc.*, 125 P.3d 1160, 1165 (Nev. 2006) (after seller "was unable to repair the defects after a total of seven months, the [buyers] were entitled to say 'that's all' and revoke their acceptance, notwithstanding [the seller's] good-faith attempts to repair the RV"). Even if the U.C.C. arguably may not itself be directly applicable to Winnebago as a manufacturer, *cf. Newmar Corp.*, 309 P.3d at 1026 (declining to

5

adopt a bright-line position on this issue), the Nevada Supreme Court would very likely construe a manufacturer's warranty to contain that same basic obligation to perform with a reasonable period of time. *See* John Herbrand, Annotation, *Construction and Effect of New Motor Vehicle Warranty Limiting Manufacturer's Liability to Repair or Replacement of Defective Parts*, 2 A.L.R.4th 576 § 5(d) (1980 and 2024 Supp.) (collecting cases from various jurisdictions holding that "a new motor vehicle manufacturer or dealer which has limited its obligation under its warranty to repair or replacement of defective parts does not have an unlimited period of time in which to make the repairs and replacements, but that the manufacturer or dealer will be held to have breached its warranty if the repairs or replacements are not made within a reasonable period of time"). Indeed, under a contrary view, Winnebago could take as much time as it wants—say, four or five years—to perform warranty repairs. Winnebago has pointed to nothing that would suggest that the Nevada Supreme Court would adopt such a position.

On this record, there is a triable issue of material fact as to whether the repairs were performed within a reasonable period of time. Camping World took nearly 10 months to complete the repairs (which Wood's expert opined were still not satisfactory), and Winnebago completely ignored Wood's complaints about Camping World's delays. Further, there is a triable issue as to whether the delays were so substantial that Wood was effectively deprived of the benefit of the

6

warranty, such that the delay itself at that point resulted in a breach of warranty without regard to *further* expenditures of time to make repairs. And if that is true, then it necessarily follows that the warranty's purported limitation on the available remedies—namely, that the only remedy is *another* (delayed) effort at repairs—is obviously unenforceable. *Cf. Newmar Corp.*, 309 P.3d at 1026 (holding, in the context of the U.C.C., that where, due to the fault of the warrantor, a warranty's limitation on remedies would effectively deprive the buyer of any remedy for the breach of warranty, the limitation will not be enforced).

For the foregoing reasons, I respectfully concur in part and dissent in part.