# IN THE SUPREME COURT OF CALIFORNIA

ALLEN KIRZHNER,

Plaintiff and Appellant,

v.

MERCEDES-BENZ USA, LLC,

Defendant and Respondent.

S246444

Fourth Appellate District, Division Three

G052551

Orange County Superior Court

30-2014-00744604

---

July 27, 2020

Justice Groban authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Kruger concurred.

---

KIRZHNER v. MERCEDES-BENZ USA, LLC

S246444


Opinion of the Court by Groban, J.


This case involves the Song–Beverly Consumer Warranty Act (the Act), Civil Code section 1790 et seq.,[1] popularly known as the "lemon law." The Act allows buyers or lessees of new motor vehicles that are under warranty and have defects the manufacturer is unable to repair after a reasonable number of attempts to elect one of two remedies: Consumers may choose either a replacement vehicle or restitution "in an amount equal to the actual price paid or payable by the buyer." (§ 1793.2, subd. (d)(2)(B).) The manufacturer must also pay for any "collateral charges" (*ibid.*) and "incidental damages" incurred (*id.*, subd. (d)(2)(A), (B)).

In this case, plaintiff Allen Kirzhner selected restitution and requested reimbursement for vehicle registration renewal and nonoperation fees he paid after the initial lease of his vehicle. The question before us is whether the Act requires defendant Mercedes-Benz USA, LLC (Mercedes) to reimburse these fees, either as collateral charges or as incidental damages. We hold that such fees are not recoverable as collateral charges because they are not auxiliary to and do not supplement the price paid for the vehicle, but they are recoverable as incidental damages if they

---

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

were incurred as a result of the manufacturer's breach of its duty to promptly provide a replacement vehicle or restitution under the Act. Because Kirzhner has not yet had an opportunity to prove causation in this case, we reverse the judgment of the Court of Appeal and remand the case for further proceedings consistent with our opinion.

## I. BACKGROUND

In 2012, Kirzhner leased a new vehicle from Mercedes. Kirzhner alleges that, during the warranty period, the vehicle exhibited a variety of defects that caused the command system, navigation system, and key fob to malfunction; the steering column adjustment mechanism and power seats to be inoperative; the coolant level warning light to illuminate; and smoke to emanate from the cigarette lighter. Kirzhner further alleges that he presented the vehicle to Mercedes for repair, but Mercedes was unable to remedy the defects after a reasonable number of repair attempts.

Nearly six months after filing suit, Kirzhner accepted a settlement offer Mercedes made pursuant to Code of Civil Procedure section 998 (section 998).[2] Mercedes's section 998 offer does not specify a monetary amount it offers to pay Kirzhner to settle the case. Instead, the offer sets forth verbatim the replacement and restitution remedies provided by the Act and

---

[2] Section 998 "creates an incentive for settlement" by "authoriz[ing] an award of costs to a party that makes a pretrial settlement offer when the opponent rejects the offer and obtains a lesser result at trial." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 356, citing *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019.)

states that Mercedes will furnish one or the other of the remedies in exchange for the vehicle. The offer further states that the precise amount of restitution, including any collateral charges and incidental damages, will "be determined by court motion if the parties cannot agree." The trial court entered judgment in favor of Kirzhner in accordance with the terms of the offer.

Because the parties could not agree on the total amount Mercedes was required to pay in restitution pursuant to the section 998 offer, Kirzhner filed a postjudgment motion requesting the trial court to determine the amount owed. The trial court awarded $47,708.06 to Kirzhner. This amount included the initial vehicle registration fee of $101 paid at the time Kirzhner entered into the lease agreement. It excluded, however, vehicle registration renewal fees Kirzhner paid in 2013 and 2014. It also excluded a nonoperation fee—a fee that a vehicle owner may pay in lieu of a registration renewal fee upon "certification that the vehicle will not be operated, moved, or left standing upon a highway" (Veh. Code, § 4604, subd. (a))—Kirzhner paid in 2015. The excluded fees totaled $680. These fees were excluded based on the trial court's determination that the registration fees recoverable under the Act "do not include all registration fees that a buyer pays over the course of a lease."

The Court of Appeal affirmed, explaining, "The only registration fee that could be considered a 'collateral charge' associated with 'the actual price paid or payable' is the one which is paid when the vehicle is purchased or leased (or accounted for in financing). [Citation.] Registration fees for future years cannot be considered a 'collateral charge' because they are incurred and paid after the initial purchase or lease." (*Kirzhner v. Mercedes-Benz USA, LLC* (2017) 18 Cal.App.5th 453, 458 (*Kirzhner*).) The Court of Appeal further explained that

incidental damages are limited to costs "incurred as a result of a vehicle being defective" and "[s]uch is not the case with vehicle registration renewal fees, which are more accurately characterized as a standard cost of owning any vehicle." (*Ibid.*, italics omitted.)

We granted review.

## II. DISCUSSION

We are asked to determine whether the Act requires a manufacturer to reimburse registration renewal and nonoperation fees, either as collateral charges or as incidental damages. Our resolution of these questions requires us to interpret several interrelated statutory provisions.

Section 1793.2, subdivision (d)(2) sets forth the manufacturer's affirmative obligation to "promptly" repurchase or replace a defective vehicle it is unable to repair, providing that if a manufacturer is "unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B)." In turn, the restitution remedy in subdivision (d)(2)(B) states that "the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, . . . including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Finally, section 1794 is the Act's general damages provision, providing that a buyer may seek damages for a

manufacturer's "failure to comply with any obligation under this chapter or under an implied or express warranty," the measure of which includes the restitution and replacement remedies as well as the remedies allowed by the California Uniform Commercial Code, including incidental damages. We must interpret the meaning of "collateral charges" under section 1793.2, subdivision (d)(2)(B), as well as the meaning of "incidental damages" as meant by that same section and relevant portions of the California Uniform Commercial Code.

To determine the Legislature's intent in interpreting these statutory provisions, "[w]e first examine the statutory language, giving it a plain and commonsense meaning." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608.) If the language is unambiguous, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 8.) "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Concerned Communities*, at p. 737.) We keep in mind that the Act is " 'manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990.)

## A. The Fees Are Not Recoverable as Collateral Charges

The Act allows for recovery of restitution "in an amount equal to the actual price paid or payable by the buyer, . . .

including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees." (§ 1793.2, subd. (d)(2)(B).) The parties do not dispute that the initial registration fee paid at the time of the purchase or lease of a vehicle is a recoverable collateral charge. Their dispute instead centers on whether subsequent registration renewal or nonoperation fees that are typically paid on an annual basis after the initial purchase or lease of the vehicle are recoverable as collateral charges. Based on the plain language of this section considered in its statutory context, we conclude that only the initial registration fee paid at the time of the lease or purchase of the vehicle and not any subsequent registration renewal or nonoperation fees are recoverable as collateral charges.

The Act makes clear that charges must be "collateral" to the "price paid or payable" to be recoverable. (§ 1793.2, subd. (d)(2)(B).) The word "price" means "[t]he cost at which something is obtained" or "[t]he consideration given for the purchase of a thing" (Black's Law Dict. (5th Ed. 1990) p. 1188, col. 2), and the word "collateral" means "[a]dditional or auxiliary; supplementary; co-operating; accompanying as a secondary fact" or "[r]elated to, complementary, accompanying as a co-ordinate" (*id.* at p. 261, col. 1). Initial registration fees are typically paid at the time of the sale or lease and are itemized as part of the total price paid for the vehicle in the sale or lease agreement. (See Veh. Code, § 4456, subd. (a)(2) [dealers are responsible for collecting registration fees and submitting them to the Department of Motor Vehicles within 30 days of the sale]; Civ. Code, §§ 2981.9, 2982, subd. (a)(2)(B) [conditional sales contracts subject to the Automobile Sales Finance Act must be in writing and must itemize all charges paid to the dealer, including registration, transfer, and titling fees].) By contrast, subsequent registration

renewal and nonoperation fees are not auxiliary to and do not supplement the price paid to own or lease the vehicle. Buyers do not pay these fees to the dealer in exchange for the vehicle. Instead, buyers renew their vehicles' registration on an annual basis (or obtain a certificate of nonoperation) and pay the associated fees to the Department of Motor Vehicles (DMV), but only so long as they continue to own or lease the vehicle at the time the fees become due.

Kirzhner points out that section 1793.2, subdivision (d)(2)(B) uses the plural form of "fees" in providing that "registration fees" are recoverable as collateral charges, but this fact offers little guidance as to whether registration renewal and nonoperation fees incurred after the initial registration fee are recoverable as collateral charges. The plural and singular forms of the word "fee" are often used interchangeably. Indeed, the Vehicle Code uses the plural form of "fees" to refer to the initial registration fee as well as the annual registration renewal fee, even though both of these fees require a single, lump-sum payment. (See, e.g., Veh. Code, §§ 4000, subd. (a)(1) ["A person shall not drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle . . . unless it is registered and the appropriate *fees* have been paid" (italics added)], 4601, subd. (a) ["The department may, upon payment of the proper *fees*, renew the registration of vehicles" (italics added)], 9553, subd. (b) [where a vehicle is transferred and penalties have not yet accrued for failure to renew registration, "the transferee has 20 days from the date of the transfer to pay the registration *fees*" (italics added)].) This may be because both the initial registration fee and the registration renewal fee are, in fact, made up of multiple fees, including a base registration fee, transportation improvement fees, service fees, California

7

Highway Patrol fees, air pollution fees, and various county and district fees. (Veh. Code, §§ 9250–9250.19.) We therefore cannot conclude that the use of the word "fees" indicates a legislative intent to allow consumers to recover all registration renewal and nonoperation fees incurred subsequent to the initial registration fee.

Focusing on the word "payable," Kirzhner additionally argues that the phrase "actual price paid or payable" indicates "a legislative intent to ensure that the manufacturer pays the consumer what he actually paid in connection with the vehicle as of the time the repurchase occurs, rather than merely what he was obliged to pay at the time of contracting." Kirzhner relies on *Mitchell v. Blue Bird Body Co.* (2000) 80 Cal.App.4th 32, in which the court interpreted the phrase " 'actual price paid or payable' " to include finance charges paid after the date of purchase because these charges are amounts consumers become "legally obligated to pay" at the time they buy or lease a new car. (*Id.* at p. 38.) Kirzhner contends that registration renewal and nonoperation fees are akin to finance charges in that the buyer is legally obligated to pay them; the buyer can avoid the fees by simply selling the car; and the fees are paid over the course of several years rather than on the date of the sale or lease.

Kirzhner's interpretation reads the word "price" out of the statute. As explained above, the word "price" means the cost at which at item is obtained. The word "payable" modifies the word "price" and operates to acknowledge that some buyers do not pay the full cost of the vehicle at the time of the initial purchase or lease. It does not, however, indicate that all charges and expenses that may later be incurred in connection with the ownership or use of the vehicle are recoverable, even if they are not a part of and do not accompany the price of the vehicle. The

finance charges at issue in *Mitchell* are unlike registration renewal and nonoperation fees because a buyer obtains financing at the time of the purchase or lease in order to cover the total cost of the vehicle. Finance charges therefore supplement and are paid auxiliary to the price of the vehicle.

Kirzhner also argues that the statute's inclusion of use and sales taxes as recoverable collateral charges supports his interpretation. (§ 1793.2, subd. (d)(2)(B) ["including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees"].) A use tax is paid "where a particular transaction is exempt from sales tax, such as one involving goods purchased in another state and stored or used in California." (*Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 67; accord, Cal. Code Regs., tit. 18, § 1620, subd. (b).) Kirzhner contends that because a buyer typically pays use tax only after the vehicle is purchased (Rev. & Tax. Code, § 6291) and sales tax is paid to the state by the retailer after the sale (Rev. & Tax. Code, § 6051), the Legislature intended for a buyer to recover charges paid for the vehicle "after its acquisition."

While Kirzhner is correct on the technical point that sales tax is paid to the state by the retailer, the practical reality is that sales tax is "almost invariably passed through in full to consumers" at the time of purchase. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1256 (conc. opn. of Kruger, J.).) A dealer may decline to pass the sales tax to the consumer, but if the dealer makes payment of sales tax a condition of the sale (as most do), the consumer must pay the tax in order to obtain the vehicle. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1108–1109; § 1656.1, subd. (a); Cal. Code Regs., tit. 18, § 1700, subd. (a).) Use tax is simply a substitute for sales tax when a particular transaction is exempt from sales tax. Although use tax is "the

obligation of the consumer ([Rev. & Tax. Code,] § 6202, subd. (a)), retailers with a nexus to California must collect use tax from the purchaser and remit it to [the State Board of Equalization]. ([Rev. & Tax. Code,] §§ 6203, 6204; Cal. Code Regs., tit. 18, § 1684, subd. (a).)" (*Dell, Inc. v. Superior Court* (2008) 159 Cal.App.4th 911, 922.) Thus, sales and use taxes are auxiliary to and supplement the price paid for the vehicle.

The initial registration fee is a recoverable collateral charge because, like finance charges and sales or use taxes, it is auxiliary to and supplements the price paid for the vehicle. As explained above, the buyer pays the initial registration fee to the dealer as part of the total cost of the vehicle and in exchange for the vehicle. It is thus a charge that is collateral to the price paid. In contrast, registration renewal and nonoperation fees are not auxiliary to and do not supplement the price paid because they are not paid as part of the total cost of the vehicle and in exchange for the vehicle. They are instead paid to the DMV long after the initial purchase or lease transaction in order to continue to legally own or operate the vehicle. For these reasons, Kirzhner's interpretation is contrary to the plain meaning of section 1793.2, subdivision (d)(2)(B).

Turning to statutory context, the replacement remedy in section 1793.2, subdivision (d)(2)(A)—which applies when the buyer elects a replacement vehicle rather than restitution—adds further support for the conclusion that registration renewal and nonoperation fees are not recoverable as collateral charges. This section provides that the manufacturer must "replace the buyer's vehicle with a new motor vehicle substantially identical to the vehicle replaced" and also "pay for, or to, the buyer the amount of any sales or use tax, license fees, registration fees, and other official fees which the buyer is obligated to pay *in connection with*

*the replacement.*" (§ 1793.2, subd. (d)(2)(A), italics added.) As Kirzhner acknowledges, the phrase "in connection with the replacement" (*ibid.*) limits the registration fees recoverable under the replacement remedy to those incurred in registering the replacement vehicle and does not include reimbursement of any registration renewal or nonoperation fees the buyer might have paid over the course of owning or leasing the defective vehicle. Nevertheless, Kirzhner argues that the Legislature, by inserting this limiting language in subdivision (d)(2)(A) (governing the replacement remedy) and omitting it in subdivision (d)(2)(B) (governing the restitution remedy), intended the restitution remedy to be more expansive and cover all registration fees paid over the course of a buyer's ownership or possession of a defective vehicle.

The Act's legislative history, however, indicates the Legislature intended the manufacturer to be responsible for an equivalent amount of registration fees regardless of whether the consumer elects a replacement vehicle or restitution. In analyzing Assembly Bill No. 2057 (1987-1988 Reg. Sess.)—the bill that enacted the replacement and restitution remedies—the Department of Finance stated that the identical remedies proposed verbatim in the related Assembly Bill No. 2050 (1987-1988 Reg. Sess.) would require "the manufacturer to pay sales tax, license and registration fees on the replacement, or an *equivalent amount* in restitution." (Dept. of Finance, Enrolled Bill Rep. on Assem. Bill No. 2057 (1987–1988 Reg. Sess.) as amended May 13, 1987, p. 3; italics added.) Other departments, such as the Department of Consumer Affairs, noted that Assembly Bill No. 2057 would require manufacturers "to reimburse sales or use tax, license and registration fees and incidental damages" without differentiating between the replacement and restitution remedies.

(Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 2057 (1987–1988 Reg. Sess.) prepared for Governor Deukmejian (Sept. 25, 1987) p. 4; accord, Dept. of Justice, Analysis of Assem. Bill No. 2057 (1987–1988 Reg. Sess.) as amended June 11, 1987, p. 2.)  Kirzhner does not point us to anything in the legislative history indicating an intent to treat the two remedies differently with respect to the amount of registration fees for which the manufacturer would be responsible.

Moreover, there is a straightforward reason for the difference in the precise wording of the replacement and restitution remedies.  The replacement remedy specifies that the manufacturer must pay for all official fees, including registration fees, that will be incurred "in connection with the replacement" (§ 1793.2, subd. (d)(2)(A)) because a buyer would normally be responsible for paying such fees upon obtaining a new vehicle. When a buyer opts for restitution, no new fees will be incurred for which the buyer would otherwise be obliged to pay. Consequentially, the restitution remedy need only specify that the manufacturer must reimburse the "price" the buyer paid for the original car "including any collateral charges such as . . . registration fees."  (§ 1793.2, subd. (d)(2)(B).)  Thus, the language used in these two provisions reflects a basic, practical difference between ensuring that a buyer is reimbursed with a cash payment for the initial registration fee paid on the defective vehicle when the buyer selects the restitution remedy and ensuring that the buyer does not pay the initial registration fee on the replacement vehicle when the buyer selects the replacement remedy.  The language is not intended to effectuate a fundamental difference in a buyer's ability to recover subsequent registration renewal fees depending on which remedy the buyer selects.    (Cf. *Jiagbogu v. Mercedes-Benz USA* (2004) 118

Cal.App.4th 1235, 1243 (*Jiagbogu*) [similarly concluding that the offset a manufacturer may claim for the buyer's use of the vehicle is the same regardless of whether the buyer selects the replacement or restitution remedy, despite a difference in the offset provision's wording with respect to the two remedies].)

In sum, based on the plain meaning of section 1793.2, subdivision (d)(2)(B)'s text and considering it in its statutory context, we hold that while the initial registration fee is recoverable as a collateral charge, subsequent registration renewal and nonoperation fees are not auxiliary to and do not supplement the price paid for a vehicle and are, therefore, not recoverable as collateral charges.

## B. The Fees May Be Recoverable as Incidental Damages

Although registration renewal and nonoperation fees are not recoverable as collateral charges, we hold that they are recoverable as incidental damages if they were incurred as a result of the manufacturer's failure to promptly provide a replacement vehicle or restitution once its obligation to do so under section 1793.2, subdivision (d)(2) arises.

Section 1793.2, subdivision (d)(2)(B) provides that a buyer may recover restitution "plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Section 1794, in turn, provides that a consumer "who is damaged by a failure to comply with any obligation under [the Act] or under an implied or express warranty or service contract may bring an action for the recovery of damages," the measure of which "shall include the rights of replacement or reimbursement as set forth in subdivision (d) of

Section 1793.2, and the following: [¶] (1) Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply. [¶] (2) Where the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply . . . ." (*Id.*, subds. (a), (b)(1)-(2).)

California Uniform Commercial Code section 2715, subdivision (1) defines "[i]ncidental damages resulting from the seller's breach" as "includ[ing] expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." California Uniform Commercial Code section 2711, subdivision (3) contains nearly identical language, providing that "[o]n rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody . . . ." No California court has examined the meaning of these sections in any detail. But because California's Uniform Commercial Code was adopted verbatim from the Uniform Commercial Code, we may look to the Uniform Commercial Code's official comments, as well as to how other courts have interpreted the Uniform Commercial Code, for guidance. (*Arriaga v. CitiCapital Commercial Corp.* (2008) 167 Cal.App.4th 1527, 1536; *Pacific Sunwear of California, Inc. v. Olaes Enterprises, Inc.* (2008) 167 Cal.App.4th 466, 474–475; see also *Porter v. Gibson* (1944) 25 Cal.2d 506, 512 [courts should review decisions of other jurisdictions when interpreting uniform acts to ensure they are applied in a uniform manner].)

Since the Act expressly states that a buyer may recover incidental damages under California Uniform Commercial Code section 2715 where a buyer has "accepted the goods" (Civ. Code, § 1794, subd. (b)(2)) but refers only to California Uniform Commercial Code sections 2711, 2712, and 2713 where a buyer has "revoked acceptance of the goods" (Civ. Code, § 1794, subd. (b)(1)), it may seem as though California Uniform Commercial Code section 2715 applies only when a buyer accepts the defective vehicle. The comment to California Uniform Commercial Code section 2715 makes clear, however, that this section was "intended to provide reimbursement for the buyer who incurs reasonable expenses *in connection with the handling of* rightfully rejected goods or *goods whose acceptance may be justifiably revoked*, or in connection with effecting cover where the breach of the contract lies in non-conformity or non-delivery of the goods." (U. Com. Code com., 23A pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2715, p. 119, italics added.) Courts have accordingly held that buyers who revoke acceptance of defective goods are entitled to any incidental damages recoverable under Uniform Commercial Code section 2-715. (See, e.g., *Newmar Corp. v. McCrary* (2013) 129 Nev. 638, 646 [309 P.3d 1021, 1027]; *Durfee v. Rod Baxter Imports, Inc.* (Minn. 1977) 262 N.W.2d 349, 357.) Courts have also determined that the same types of expenses are recoverable as incidental damages under either Uniform Commercial Code section 2-715 or Uniform Commercial Code section 2-711. (See, e.g., *Lanners v. Whitney* (1967) 247 Or. 223, 236 [428 P.2d 398, 404] (*Lanners*); *Warren v. Guttanit, Inc.* (1984) 69 N.C.App. 103, 114 [317 S.E.2d 5, 13].) We therefore need not resolve whether Kirzhner accepted or revoked acceptance of his vehicle—or whether California Uniform Commercial Code section 2715 or 2711 applies—in order to

evaluate whether he is entitled to recover his registration renewal and nonoperation fees as incidental damages.

The parties do not dispute that Kirzhner's registration renewal and nonoperation fees were "reasonably incurred." (Cal. U. Com. Code, § 2715, subd. (1).) We accordingly focus only on the following two questions in determining whether Kirzhner's registration renewal and nonoperation fees are recoverable as incidental damages: First, are such fees incurred in the "inspection, receipt, transportation and care and custody" of a vehicle? (*Ibid.*) Second, do such fees "result[] from" or are they incurred "incident to" a manufacturer's breach of warranty or other violation of the Act? (*Ibid.*) In examining these interrelated questions, we conclude that registration renewal and nonoperation fees paid after the manufacturer's duty to promptly provide a replacement vehicle or restitution arises are expenses incurred in the "care and custody" of a defective vehicle. (*Ibid.*) We further conclude that such fees "result from[]" and are incurred "incident to" the manufacturer's breach of its duty to promptly provide restitution or a replacement vehicle because the buyer would not have incurred the fees but for the manufacturer's delay. (*Ibid.*)

### 1. Care and Custody Costs

Turning to the first question, we consider whether registration renewal and nonoperation fees are expenses incurred in the "inspection, receipt, transportation and care and custody" of a vehicle. (Cal. U. Com. Code, § 2715, subd. (1).)

As cases applying Uniform Commercial Code section 2-715 make clear, the phrase "care and custody" should not be read broadly to encompass all costs incurred over the course of possessing, owning, operating, or using nonconforming goods.

Though the Court of Appeal was concerned about opening up a " 'Pandora's box' " of potential costs manufacturers would be required to pay if it were to rule that registration renewal fees were recoverable as incidental damages (*Kirzhner*, *supra*, 18 Cal.App.5th at p. 458), there are limits on such damages. Indeed, Kirzhner concedes that standard ownership or use costs—like gas, car washes, or oil changes—will normally not qualify as incidental damages. We do not foreclose the possibility that, in an unusual case, a buyer may be able to present particular circumstances that might justify an exception to this general rule. Ordinarily, however, buyers are free to choose whether to put gas or oil in the car and usually opt to expend such costs solely for their own benefit in order to drive the vehicle and keep it operational. We have not found any case in which a court has awarded such standard ownership or use costs—incurred solely for the buyer's benefit and unconnected to the manufacturer's breach—as incidental damages. Registration renewal and nonoperation fees are different, at least where they are incurred after the manufacturer's duty to promptly provide a replacement vehicle or restitution arises. At this point in time, the fees are no longer simply a standard cost of ownership. They instead closely resemble the types of post-revocation preservation and maintenance costs courts have awarded as incidental damages reasonably incurred in the care and custody of nonconforming goods pending their return to the seller.

In *Lanners*, for example, the Oregon Supreme Court awarded as incidental damages costs necessary to protect and maintain a defective airplane after revocation, including storage costs, ground insurance charges, the costs of removing the radio and battery, and the costs of installing special storage oil. (*Lanners*, *supra*, 428 P.2d at p. 404.) Similarly, in *Western*

*Conference Resorts, Inc. v. Pease* (Colo.App. 1983) 668 P.2d 973, the court awarded service work expenses and tie-down fees—i.e., fees incurred in "tying down" an airplane to minimize the possibility of damage from strong winds—to preserve and protect a defective airplane after revocation. (*Id.* at pp. 976–977.) The buyers in *Lanners* and *Western Conference* did not incur these costs in order to fly the airplanes. Nor did they incur the costs in order to increase the value of their ownership interest in the airplanes, given that they no longer had any ownership interest having revoked acceptance of the airplanes. (Cal. U. Com. Code, § 2401, subd. (4) [rejection or revocation of acceptance of the goods "revests title to the goods in the seller"].) Instead, the buyers incurred the costs in order to maintain the nonconforming airplanes and to protect them from damage or theft for the sellers' benefit while they were still in the buyers' care and custody pending their eventual return to the sellers. (*Lanners*, at p. 404; *Western Conference*, at pp. 976–977.)

Registration renewal and nonoperation fees serve similar purposes, at least when they are incurred and paid after the manufacturer fails to comply with its duty to promptly repurchase or replace a defective vehicle. To explain, the Act provides that, where a manufacturer is unable to repair the vehicle after a reasonable number of attempts, the manufacturer must "promptly" provide a replacement vehicle or restitution. (§ 1793.2, subd. (d)(2).) Once the manufacturer's duty to do so arises, the buyer no longer has the same ownership interest in the vehicle since the manufacturer can (and should) replace or repurchase it at any moment. A lessee's interest in "possession and use of" the vehicle (Cal. U. Com. Code, § 10103, subd. (a)(10)) for a certain number of years under the lease agreement is likewise diminished. A lessee never owns the car during the term

of the lease, and the car typically reverts to the lessor in just two or three years under the terms of the lease agreement. The lessee is nonetheless obligated to make ongoing registration payments as long as the manufacturer fails to comply with its duty to promptly replace or repurchase the vehicle. Indeed, despite this lessened interest, buyers and lessees are legally required to pay, and cannot avoid paying, registration renewal fees incurred prior to the vehicle's transfer back to the manufacturer. (Veh. Code, §§ 4000, subd. (a)(1), 4601, 4604.) Moreover, the buyer's payment of such fees inures to the benefit of the manufacturer in two ways: First, the fees are tied to and transfer with the vehicle and, as a result, the manufacturer will not need to pay any further registration fees so long as it retrieves the vehicle more than 30 days prior to the registration's expiration. (Veh. Code, §§ 5902.5, 9255.) The buyer cannot obtain a refund from the DMV for any paid fees, even if they were paid only one day prior to the vehicle's return to the manufacturer. (See Veh. Code, § 42231.) Second, payment of the fees safeguards the vehicle against impoundment (Veh. Code, § 22651, subd. (*o*)(1)(A)) and hefty delinquency penalties (Veh. Code, §§ 9553, subd. (a), 9554)—penalties for which the manufacturer would be responsible upon transfer unless it could show that it was unaware of the buyer's failure to pay the fees (Veh. Code, § 9562, subd. (a)).

For these reasons, registration renewal and nonoperation fees incurred after the manufacturer's duty to promptly repurchase or replace the vehicle arises are unlike the standard costs of ownership or use that buyers freely choose to incur for their own benefit in order to drive the vehicle. They are more akin to post-revocation care and custody costs courts have awarded as reasonably incurred in order maintain and protect the goods for the seller's benefit pending the seller's retrieval of the

goods. The few cases that have analyzed whether registration renewal fees or similar fees are among the types of costs that may be recovered as incidental damages are in accord with our view. (See, e.g., *Jacobs v. Rosemount Dodge-Winnebago South* (Minn. 1981) 310 N.W.2d 71, 77 [awarding all licensing fees paid from the date of revocation through trial on the ground that the buyers paid these fees in fulfillment of their post-revocation duty to hold the defective motorhome with reasonable care until the seller retrieved it].) We therefore conclude that registration renewal and nonoperation fees paid after the manufacturer's duty to promptly repurchase or replace the vehicle arises are recoverable as incidental damages incurred in the care and custody of a defective vehicle.

### 2. *Causation*

We next consider whether Kirzhner's registration renewal and nonoperation fees "result[ed] from" or were incurred "incident to" Mercedes's breach or other violation of the Act. (Cal. U. Com. Code, § 2715, subd. (1).) Kirzhner argues the he incurred the fees as a result of several different alleged breaches, including Mercedes's alleged (1) breach of the implied warranty of merchantability; (2) breach of its duty to repair under its express written warranty; and (3) breach of its duty under the Act to promptly repurchase the vehicle after a reasonable number of repair attempts. We conclude that Kirzhner is entitled to recover only those fees incurred and paid as a result of Mercedes's failure to promptly provide him with restitution.

In general, incidental damages incurred as a result of the seller's breach of its duties under its express and implied warranties to deliver a merchantable and defect-free vehicle or to repair the vehicle are recoverable under the Act. Such damages

would include the types of exemplar costs listed in the Act—i.e., "repair, towing, and rental car costs" (§ 1793.2, subd. (d)(2)(B))— because such costs "result[] from" and are incurred "incident to" (Cal. U. Com. Code, § 2715, subd. (1)) the defect itself and the failure to repair the defect. Stated differently, the causal link is clear with respect to these types of costs since the buyer would not have incurred them but for the breach. To provide an example, where a vehicle's defective engine breaks down and the vehicle ceases to function, a buyer may incur costs in towing the vehicle to a repair facility, additional costs in repairing the vehicle, and further costs in renting a car while the defective vehicle is being repaired. All such costs are recoverable as resulting from the manufacturer's failure to provide the buyer with a defect-free vehicle, since the costs would not have been incurred but for the defect.

By contrast, Kirzhner would have incurred and paid registration renewal or nonoperation fees even if his vehicle had been defect-free and even if Mercedes had been successful in repairing the defects. We therefore cannot conclude that Kirzhner would not have incurred the fees but for the fact that Mercedes provided him with a defective vehicle that never conformed to its warranties. As many courts have held, "[a]n expense will not ordinarily be considered as an item of incidental or consequential damage to a breach of warranty when the buyer would have incurred the claimed expense even if the product or goods had been as warranted." (*Delhomme Industries, Inc. v. Houston Beechcraft, Inc.* (5th Cir. 1984) 735 F.2d 177, 185–186; accord, *Industrial Graphics, Inc. v. Asahi Corp.* (D. Minn. 1980) 485 F.Supp. 793, 808 [overhead expenses were "not recoverable in total" because they "would have been incurred . . . even if the [goods] had been as warranted[,]" but they were recoverable in

the amount greater than the buyer would have otherwise expended had the goods been defect-free]; Cal. U. Com. Code, § 1305, subd. (a) [the goal is to put the "aggrieved party . . . in as good a position as if the other party had fully performed"].)

In a different case, there may be unique facts presented under which registration renewal fees could be found to have been caused by a manufacturer's breach of express or implied warranties. For example, if the buyer could not use the vehicle due to the defects and was forced to acquire a substitute vehicle as cover, the buyer might be able to recover the additional registration fee incurred and paid on the substitute vehicle. But because registration renewal fees are a standard cost of owning or leasing any vehicle, defective or not, they will normally not be recoverable as incidental damages resulting from a breach of an express or implied warranty. Here, Kirzhner does not allege any facts tending to show that he incurred increased or additional registration fees that he would not have otherwise paid absent his vehicle's defects and Mercedes's failure to repair. Simply put, the causal link between Mercedes's alleged breach of implied or express warranties and Kirzhner's payment of registration renewal and nonoperation fees is missing.

Kirzhner is entitled, however, to recover any registration renewal and nonoperation fees he incurred after the date Mercedes failed to promptly provide him with restitution. At this point in time, when the buyer or lessee has a greatly diminished interest in the vehicle and payment of the fees primarily benefits the manufacturer, it is reasonable to conclude that the fees "result[ed] from" and were incurred "incident to" the manufacturer's delay. (Cal. U. Com. Code, § 2715, subd. (1).)

We provide the following hypothetical scenario to illustrate: A buyer first presents a defective car to a manufacturer for repair three months after purchase. The manufacturer is unable to repair the car during the first repair attempt or three subsequent repair attempts over the next four months, triggering a presumption under section 1793.22, subdivision (b)(2) that a reasonable number of repair attempts have been made. The manufacturer nevertheless delays providing the buyer with restitution or a replacement vehicle and, six months later, the buyer incurs a registration renewal fee. The buyer pays the fee and the very next day the manufacturer finally repurchases or replaces the vehicle. The payment of the fee, while legally required, was not a standard cost of ownership or use of the vehicle since the buyer had a lessened ownership interest at the time the fee was paid and was simply waiting for the manufacturer to comply with its duty to promptly repurchase or replace the vehicle. The fee covers the vehicle for an entire year but, now that the vehicle is back in the manufacturer's ownership and possession, its payment benefits the manufacturer. Even under a less extreme hypothetical scenario where the buyer continues to possess and even use the car for some time after payment of the registration renewal fee, the fee still benefits the manufacturer as it might finally comply with its duty to repurchase or replace the vehicle at any moment. Under either scenario, a trier of fact may reasonably conclude that the buyer would not have paid the registration renewal fee but for the manufacturer's delay in repurchasing or replacing the vehicle.

In short, we conclude that Kirzhner may recover as incidental damages only those registration renewal and nonoperation fees resulting from Mercedes's alleged breach of its duty under section 1793.2, subdivision (d)(2) to promptly provide

him with restitution. He is not entitled to recover any registration renewal and nonoperation fees he paid prior to Mercedes's alleged delay because those fees were not caused by Mercedes's breach or other violation of the Act.

## C. Incidental Damages May Be Based on Violations of the Act

Mercedes argues that its duty under section 1793.2, subdivision (d)(2) to promptly provide restitution or a replacement vehicle after a reasonable number of repair attempts cannot serve as a basis for incidental damages because this duty does not constitute an independent ground for liability under the Act. Mercedes further asserts that the question of whether a manufacturer complied with its obligation to promptly provide restitution or a replacement vehicle is relevant only to the buyer's potential recovery of civil penalties for the manufacturer's willful failure to comply with the Act. Since its section 998 offer did not include an offer to pay civil penalties, Mercedes believes the issue of whether it failed to promptly provide restitution is not presently before us in this case.

Mercedes is correct that a manufacturer's willful failure to promptly provide restitution or a replacement vehicle may result in an award of civil penalties pursuant to section 1794. (§ 1794, subds. (c) & (e)(1); *Lukather v. General Motors, LLC* (2010) 181 Cal.App.4th 1041, 1051–1052 (*Lukather*).) But section 1794 also allows buyers to recover damages for nonwillful violations of the Act. (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 (*Kwan*).) Subdivision (a) of section 1794 allows a buyer "who is damaged by a failure to comply with *any* obligation under [the Act] *or* under an implied or express warranty or service contract" to "bring an action for the recovery of damages." (§ 1794, subd. (a), italics added.) The Act imposes

several affirmative obligations on manufacturers in addition to the requirement that they comply with their own warranties. These obligations include maintaining "sufficient service and repair facilities" (§ 1793.2, subd. (a)(1)(A)); commencing repairs "within a reasonable time" (§ 1793.2, subd. (b)); completing repairs "within 30 days" (*ibid.*); and "promptly" replacing or providing restitution for those vehicles the manufacturer cannot repair after a reasonable number of attempts (§ 1793.2, subd. (d)(2); accord, *Jiagbogu*, *supra*, 118 Cal.App.4th at p. 1244). The Act does not indicate that a buyer may recover only civil penalties—and not damages—for certain violations of the Act's obligations, as Mercedes contends. In fact, the civil penalty provision set forth in section 1794, subdivision (c) indicates the opposite, providing that "[i]f the buyer establishes that the failure to comply was willful, the judgment may include, *in addition* to the amounts recovered under subdivision (a), a civil penalty . . . ." (§ 1794, subd. (c), italics added.) Thus, the plain language of this section makes clear that the Act creates a "two-tier system of damages" for willful and negligent violations of any of the Act's affirmative obligations. (*Kwan*, at p. 184.)

The Act's legislative history supports the above interpretation. Section 1794 originally provided that consumers who were injured by "willful" violations of the Act could bring an action "to recover 3 times actual damages plus attorney's fees." (Legis. Counsel's Dig., Assem. Bill No. 3560 (1981–1982 Reg. Sess.).) It was amended in 1982 to expressly include a remedy for nonwillful violations of the Act's statutory obligations, which was previously only available under the common law doctrine of negligence per se. (Dept. of Consumer Affairs, Explanation and Analysis of Assem. Bill No. 3560 (1981–1982 Reg. Sess.) March 1982, pp. 4–5, 10.) The amendment thus "entitle[d] a buyer to

recover damages . . . for nonwilful [*sic*] (negligent) Song–Beverly violations by a warrantor, in addition to the buyer's present right to recover [civil penalties] for wilful [*sic*] (intentional) violations." (Dept. of Consumer Affairs, Analysis of Assem. Bill No. 3324 (1979–1980 Reg. Sess.).)  Accordingly, buyers may seek incidental damages resulting from a manufacturer's alleged failure to promptly provide restitution or a replacement vehicle.

### D.  The Section 998 Offer Does Not Bar Recovery

Mercedes argues that Kirzhner is precluded from showing that his registration renewal and nonoperation fees resulted from any of Mercedes's alleged breaches because the section 998 offer does not constitute an admission that Mercedes's breached its warranty or otherwise violated the Act.  It is true that a section 998 offer is not an adjudication of liability.  (*Milicevich v. Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1004.)  It does not follow, however, that Kirzhner is precluded from showing he is entitled to recover the fees as incidental damages, as Mercedes seems to suggest.  The section 998 offer, accepted by Kirzhner, states that Mercedes will "make restitution in an amount equal to the actual price paid or payable . . . including any collateral charges . . . plus incidental damages to which the buyer is entitled under Section 1794 . . . all to be determined by court motion if the parties cannot agree."  By offering to pay incidental damages, the section 998 offer presumes liability with the precise amount of damages to be later agreed upon by the parties or ruled upon by a court.  In other words, Mercedes "has already conceded that it would be liable for incidental damages; the question is only whether the damages alleged are, in fact, incidental." (*Carrion v. Kirby Oldsmobile, Inc.* (C.D.Cal., Nov. 9, 2018, No. SACV 17-00231 JVS(JCGx)) 2018 WL 6137127, p. *2 [rejecting similar argument made in relation to a settlement

agreement providing for reimbursement of an unspecified amount of incidental damages].)   Thus, the section 998 offer does not prevent Kirzhner from seeking recovery of the fees as incidental damages.

### E.  Remand is Necessary on the Issue of Causation

Although the section 998 offer does not preclude Kirzhner from seeking incidental damages, and although we conclude that registration renewal and nonoperation fees incurred as a result of a manufacturer's failure to promptly provide restitution or a replacement vehicle under section 1793.2, subdivision (d)(2) are recoverable as incidental damages, we are unable to evaluate whether any of the fees Kirzhner paid resulted from Mercedes's failure to promptly provide him with restitution.  The duty to promptly provide restitution arises only after the manufacturer is unable to repair the vehicle after being afforded the opportunity to make a reasonable number of repair attempts.  (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 303.) This case comes to us upon an early section 998 settlement offer and, consequentially, no record has been developed to show the dates on which Kirzhner presented the vehicle for repair; the total number of attempted repairs; how long the repairs took; whether Mercedes attempted to fix the same problem or different problems; whether any of the repairs were successful; or whether any of the Act's presumptions, set forth in section 1793.22, subdivision (b), that a "reasonable number of attempts have been made," apply.  We accordingly have no way of knowing when, if ever, Mercedes's duty to promptly provide restitution arose and when its breach of this duty occurred.

Kirzhner argues that, because he commenced this lawsuit in September 2014 and Mercedes did not provide him with

restitution until August 2015, Mercedes failed to promptly provide him with restitution. But, even though we agree that a delay of nearly a year from the date the manufacturer's duty to provide restitution arises to the date it actually provides restitution is not prompt, Kirzhner's filing of a lawsuit is not evidence that Mercedes's duty had already arisen by the date the lawsuit was filed. We note, however, that while Kirzhner must show when the breach arose in order to recover his registration renewal and nonoperation fees as incidental damages, he need not prove that Mercedes's failure to promptly provide him with restitution was willful since he is not seeking civil penalties. Thus, Mercedes cannot escape its obligation to pay the fees as incidental damages by, for example, showing that it held a "good faith and reasonable belief" that its repurchase obligation had not yet arisen at the time Kirzhner incurred and paid the fees. (*Kwan*, *supra*, 23 Cal.App.4th at p. 185.) Instead, Kirzhner may recover any fees resulting from Mercedes's negligent failure to promptly provide him with restitution. We additionally note that if Kirzhner proves that Mercedes's repurchase obligation had, in fact, arisen by the time he filed suit, he will likely be able to recover the nonoperation fee he paid in June 2015 since a delay of at least nine months from the time he filed suit to the date he paid the fee is not prompt.

We acknowledge that our holding requires a buyer to prove not only that the manufacturer's duty to provide restitution or a replacement vehicle arose but also that a manufacturer failed to promptly comply with that duty in order to recover restitution renewal and nonoperation fees as incidental damages. But we believe that, in many cases, this added burden will not be difficult to meet. The question of whether a manufacturer has any obligation to provide restitution or a replacement vehicle is

28

almost always the key issue in dispute in these cases, with manufacturers arguing that they have not yet been afforded with the opportunity to make a reasonable number of repair attempts or denying that the vehicle is defective. (See, e.g., *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 888; *Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 479–480.) As such, courts regularly determine whether and when the manufacturer's duty to provide restitution or a replacement vehicle arose. (See, e.g., *Lukather, supra,* 181 Cal.App.4th at p. 1052 [determining the date by which the manufacturer's duty arose]; *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 804 [same].) If the buyer succeeds in proving that the duty arose well before filing suit, it should not be difficult for the buyer to also prove that the manufacturer failed to act promptly since the buyer had to resort to a lawsuit in order to get the manufacturer to finally comply with its duty.

To summarize, although the parties' section 998 settlement presumes liability, it leaves the amount of damages to be awarded open and requires a court to determine the amount "if the parties cannot agree." Here, the parties could not agree on an amount and dispute whether Mercedes's alleged delay caused Kirzhner to incur any of his registration renewal or nonoperation fees as incidental damages. We accordingly reverse the judgment of the Court of Appeal with directions to remand the matter for further proceedings consistent with our opinion.

## III. DISPOSITION

In conclusion, we hold that registration renewal and nonoperation fees are not recoverable as collateral charges under section 1793.2, subdivision (d)(2)(B) of the Act because they are not collateral to the price paid for the vehicle, but they are

recoverable as incidental damages under section 1794 of the Act if they were incurred and paid as a result of a manufacturer's failure to promptly provide a replacement vehicle or restitution under section 1793.2, subdivision (d)(2). Because the disputed issue of causation has not yet been adjudicated, we reverse the judgment of the Court of Appeal and remand with directions to remand the case to the trial court for proceedings consistent with this opinion.

**GROBAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Kirzhner v. Mercedes-Benz USA, LLC
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 18 Cal.App.5th 453
**Rehearing Granted**


_____

**Opinion No.** S246444
**Date Filed:** July 27, 2020
_____

**Court:** Superior
**County:** Orange
**Judge:** James Di Cesare


_____

**Counsel:**

Anderson Law Firm, Martin W. Anderson; Law Office of Jeffrey Kane and Jeffrey Kane for Plaintiff and Appellant.

Universal & Shannon, Jon D. Universal, Marie L. Wrighten-Douglass, Patrea R. Bullock, Jay C. Patterson and James P. Mayo for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Martin W. Anderson
Anderson Law Firm
2070 North Tustin Avenue
Santa Ana, CA 92705
(714) 516-2700

James P. Mayo
Universal & Shannon, LLP
2240 Douglas Blvd., #290
Roseville, CA 95661
(916) 780-4050